UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

GEORGE EDWARD THOMPSON, JR.,

                Petitioner,

v.

ADAM DOUGLAS,

                Respondent.

_____/

Case No. 1:25-cv-68

Honorable Hala Y. Jarbou

## OPINION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner is represented by counsel. In an opinion (ECF No. 4) entered on January 28, 2025, the Court indicated that Petitioner's § 2254 petition appeared to be procedurally defaulted. The Court provided Petitioner an opportunity to show cause, within 28 days, why his petition should not be dismissed as procedurally defaulted. (Order, ECF No. 5.) Petitioner filed his response on February 21, 2025. (ECF No. 7.)

In an opinion (ECF No. 8) entered on February 28, 2025, the Court concluded, after reviewing Petitioner's response, that Petitioner had failed to show sufficient cause to overcome the procedural default of his § 2254 petition. The Court, however, recognized that Petitioner had attempted to overcome his procedural default by asserting ineffective assistance of appellate counsel, and that Petitioner's appellate counsel is the same attorney currently representing Petitioner for purposes of these federal habeas proceedings. Given the conflict of interest presented by that scenario, the Court directed Petitioner to inform the Court whether or not he waived the conflict of interest. (Order, ECF No. 9.) The Court indicated that if Petitioner did not waive the

conflict, current counsel could not continue to represent Petitioner in this matter, and the Court would then allow Petitioner time to obtain new counsel if he so desired. (*Id.*)

On March 13, 2025, Petitioner, through counsel, filed a notice indicating that Petitioner was waiving the conflict of interest noted by the Court. (ECF No. 10.) In light of that waiver, this matter is again before the Court for preliminary review of the § 2254 petition under Rule 4 of the Rules Governing § 2254 Cases. The Court conducts a preliminary review of the petition under Rule 4 to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (discussing that a district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). The Court may *sua sponte* dismiss a habeas action as procedurally defaulted. *See, e.g.*, *Sowell v. Bradshaw*, 372 F.3d 821, 830 (6th Cir. 2004).

As noted above, the Court afforded Petitioner an opportunity to demonstrate why his petition should not be dismissed as procedurally defaulted. After Petitioner filed his response, the Court concluded that Petitioner had failed to sufficiently show cause to overcome the default. In light of that conclusion, and in light of Petitioner's waiver of the conflict of interest noted above, the Court will dismiss the § 2254 petition as procedurally defaulted.

## Discussion

### I.    Factual Allegations

Petitioner George Edward Thompson, Jr. is incarcerated with the Michigan Department of Corrections at the Saginaw County Correctional Facility (SRF) in Freeland, Saginaw County,

Michigan. Following a jury trial in the Kalamazoo County Circuit Court, Petitioner was convicted of one count of accosting children for immoral purposes, in violation of Mich. Comp. Laws § 750.145a, and two counts of criminal sexual conduct-1st degree (CSC-I), in violation of Mich. Comp. Laws § 750.520b. On December 13, 2021, the court sentenced Petitioner to 13 years, 6 months to 30 years for each of the CSC-I convictions, and 2 to 4 years for the accosting conviction. *See* Offender Tracking Information System (OTIS), https://mdocweb.state.mi.us/otis 2/otis2profile.aspx?mdocNumber=689108 (last visited Feb. 28, 2025).

Following sentencing, Petitioner, through counsel, filed a motion for a new trial, raising claims of ineffective assistance. The trial court conducted a hearing, at which "[Petitioner's] trial counsel answered numerous questions regarding his representation of [Petitioner] and their trial strategy." *People v. Thompson*, No. 359776, 2023 WL 5993093, at *2 (Mich. Ct. App. Sept. 14, 2023). In an order entered on December 19, 2022, the trial court denied Petitioner's motion for a new trial. (ECF No. 2-6, PageID.348–363.)

On direct appeal, Petitioner raised numerous claims of ineffective assistance of counsel, as well as a claim that the State presented insufficient evidence to support his convictions. The Michigan Court of Appeals rejected Petitioner's arguments and affirmed his convictions and sentences on September 14, 2023. *See Thompson*, 2023 WL 5993093, at *1. Petitioner filed a motion seeking leave to file a late application for leave to appeal, along with his application for leave to appeal to the Michigan Supreme Court, on November 13, 2023. Case Information, *People v. Thompson*, No. 166352 (Mich.), https://www.courts.michigan.gov/c/courts/coa/case/359776, (last visited Feb. 28, 2025). The filing was four days late under the Michigan Court Rules. Mich. Ct. R. 7.305(C)(2). The Michigan Court Rules preclude "the filing [of] a motion to file a late application for leave to appeal under MCR 7.305(C)." Mich. Ct. R. 7.316(B). Consequently, the

Michigan Supreme Court denied Petitioner's motion to docket the application and dismissed Petitioner's late application for leave to appeal on January 30, 2024, *see People v. Thompson*, 1 N.W.3d 276 (Mich. 2024), and denied his motion for reconsideration on March 29, 2024, *see People v. Thompson*, 3 N.W.3d 806 (Mich. 2024).[1]

Petitioner, through counsel, filed his § 2254 petition on January 17, 2025. (ECF No. 1.) Petitioner raises the same issues in his petition that he raised in the Michigan appellate courts:

I.      Mr. Thompson was denied his 6th Amendment right to counsel both before and during trial that prejudiced him, warranting a new trial.

II.     Mr. Thompson was denied his 14th Amendment constitutional right to Due Process where there was insufficient evidence to convict on the counts of conviction.

(§ 2254 Pet., ECF No. 1, PageID.3–4, 9–10.)

## II.    Exhaustion and Procedural Default

Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *Id.* at 844, 848; *see also Picard v. Connor*, 404 U.S. 270, 275–77 (1971); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Anderson v. Harless*, 459 U.S. 4, 6 (1982). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to

---

[1] If the deadline set forth in 7.305(C) were not jurisdictional, the Michigan Supreme Court would be authorized to extend the deadline "on a showing that there was good cause for the delay or that it was not due to the culpable negligence of the party or attorney." Mich. Ct. R. 7.316(B). Petitioner explains that the application for leave to appeal to the Michigan Supreme Court had been filed within the deadline, but that it was filed electronically in the Michigan Court of Appeals instead of the Michigan Supreme Court. (§ 2254 Pet., ECF No. 1, PageID.7.) Upon discovery of the error, counsel filed the late application in the Michigan Supreme Court. Counsel acknowledges that the late filing "was the fault of counsel." (*Id.*)

all levels of the state appellate system, including the state's highest court. *O'Sullivan*, 526 U.S. at 845; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). The district court can and must raise the exhaustion issue *sua sponte* when it clearly appears that habeas claims have not been presented to the state courts. *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen v. Perini*, 424 F.2d 134 138–39 (6th Cir. 1970).

Fair presentation has a substantive component and a procedural component. With regard to substance, fair presentation is achieved by presenting the asserted claims in a constitutional context through citation to the Constitution, federal decisions using constitutional analysis, or state decisions which employ constitutional analysis in a similar fact pattern. *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993); *see also Picard*, 404 U.S. at 277–78. With regard to procedure, the fair presentation requirement is not satisfied when a claim is presented in a state court in a procedurally inappropriate manner that renders consideration of its merits unlikely. *Olson v. Little*, 604 F. App'x 387, 402 (6th Cir. 2015) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989) ("[W]here the claim has been presented for the first and only time in a procedural context in which its merits will not be considered unless 'there are special and important reasons therefor,' . . . does not, for the relevant purpose, constitute 'fair presentation.'")); *see also Ogle v. Ohio Dep't of Rehab. & Corr.*, No. 17-3701, 2018 WL 3244017, at *2 (6th Cir. Feb. 27, 2018); *Stokes v. Scutt*, 527 F. App'x 358, 363–64 (6th Cir. 2013). The Court concludes that Petitioner failed to fairly present his federal constitutional issues to the Michigan Supreme Court because he presented them in a procedurally inappropriate manner. Therefore, Petitioner has failed to carry his burden of showing exhaustion. *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

As the United States Court of Appeals for the Sixth Circuit has recognized:

> Exhaustion is a problem only if the state still provides a remedy for the habeas petitioner to pursue, thus providing the state courts an opportunity to correct a

constitutionally infirm state court conviction. If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts.

*Id.* Petitioner's circumstance, therefore, is very similar to the circumstance facing Petitioner Boerckel as described in *O'Sullivan v. Boerckel*:

Boerckel's amended federal habeas petition raised three claims that he had pressed before the Appellate Court of Illinois, but that he had not included in his petition for leave to appeal to the Illinois Supreme Court. There is no dispute that this state court remedy-a petition for leave to appeal to the Illinois Supreme Court-is no longer available to Boerckel; the time for filing such a petition has long passed. *See* Ill. Sup.Ct. Rule 315(b).

*O'Sullivan*, 526 U.S. at 848. The Supreme Court there concluded that "Boerckel's failure to present three of his federal habeas claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims." *Id.*

Now that Petitioner's direct appeal is complete, there is only one means of collaterally raising the issues Petitioner failed to raise in the Michigan Supreme Court. Under Michigan law, the only means of collaterally attacking a criminal judgment after the direct appeal is by filing a motion for relief from judgment under Michigan Court Rule 6.502. *See People v. Watroba*, 483 N.W.2d 441, 442 (Mich. Ct. App. 1992) (stating "Subchapter 6.500 of the Michigan Court Rules establishes the procedures for pursuing postappeal relief from a criminal conviction. The subchapter is the exclusive means to challenge a conviction in Michigan once a defendant has exhausted the normal appellate process."). That subchapter of the Michigan Court Rules, however, does not permit a court to grant relief in every circumstance. For example, the trial court may not grant relief to the defendant if the motion "alleges grounds for relief which were decided against the defendant in a prior appeal." Mich. Ct. R. 6.508(D)(2). That is exactly the situation here with respect to Petitioner's grounds for relief. He presented the same issues in his direct appeal, and they were decided against him by the Michigan Court of Appeals.

The Court concludes, therefore, that Petitioner's failure to timely present his grounds for relief to the Michigan Supreme Court has resulted in a procedural default of those claims. The Court cannot consider the claims unless Petitioner establishes cause for his failure to timely present the issues to the Michigan Supreme Court and resulting prejudice or by showing that the Court's consideration is necessary to avoid a miscarriage of justice. *Bradshaw v. Richey*, 546 U.S. 74, 79 (2005) (citing *Coleman v. Thompson*, 501 U.S. 722, 749–50 (1991)); *see also Theriot v. Vashaw*, 982 F.3d 999, 1003 (6th Cir. 2020) (noting that the court has "the option . . . to excuse a procedural default and review a defaulted claim on the merits if a petitioner demonstrates '(1) cause for the default and actual prejudice, or (2) that the failure to consider the claim will result in a fundamental miscarriage of justice' " (quoting *Williams v. Bagley*, 380 F.3d 932, 966 (6th Cir. 2004))). In his response (ECF No. 7), Petitioner contends that he can demonstrate both cause and prejudice and a fundamental miscarriage of justice to overcome his procedural default.

## A.    Cause and Prejudice

To show cause sufficient to excuse a failure to raise claims on direct appeal, Petitioner must point to "some objective factor external to the defense" that prevented him from raising the issue in his first appeal. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see McCleskey v. Zant*, 499 U.S. 467, 497 (1991). A petitioner who fails to demonstrate cause and prejudice cannot have a cognizable claim. *See Gray v. Netherland*, 518 U.S. 152, 162 (1996). Further, where a petitioner fails to show cause, the court need not consider whether he has established prejudice. *See Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982); *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir. 1985).

Here, Petitioner argues that he can demonstrate cause and prejudice due to "ineffectiveness in his representation on direct appeal, a stage at which the Supreme Court has established a constitutional right to the effective assistance of counsel." (ECF No. 7, PageID.584.) Specifically, Petitioner argues:

> The Michigan Supreme Court rarely grants Applications for Leave to Appeal. More importantly, any claim that the issues were not exhausted through the Michigan Supreme Court were NOT the fault of Mr. Thompson but were the result of appellate counsel filing the Application electronically within the correct time period but in the wrong court. Mr. Thompson did not know of the deadline to file the Application for Leave to Appeal. Counsel made the mistake, not Mr. Thompson.

(*Id.*, PageID.584–585.)

In 2010, the Supreme Court considered the issue of when attorney error qualifies as an "extraordinary circumstance" warranting equitable tolling of the AEDPA limitations period. *See Holland v. Florida*, 560 U.S. 631 (2010). The *Holland* Court was attempting to determine when attorney error/failure might rise to the level of an extraordinary circumstance in light of the Court's prior decisions that established that "a garden variety claim of excusable neglect" was not enough, *id*. at 651 (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)), and that "a simple 'miscalculation' that leads a lawyer to miss a filing deadline" was not enough, *id*. (quoting *Lawrence v. Florida*, 549 U.S. 327, 336 (2007). In the years preceding *Holland*, the federal courts of appeals had generally concluded that simple negligence was not enough, but that egregious attorney misconduct warranted equitable tolling. But, in denying Holland relief, the Eleventh Circuit had raised the floor well above simple negligence. That court concluded that "when a petitioner seeks to excuse a late filing on the basis of his attorney's unprofessional conduct, that conduct, even if it is 'negligent' or 'grossly negligent,' cannot 'rise to the level of egregious attorney misconduct' that would warrant equitable tolling unless the petitioner offers 'proof of bad faith, dishonesty, divided loyalty, mental impairment or so forth.'" *Id*. at 634. The Supreme Court rejected any rigid formula beyond that which was already established: simple excusable neglect—like a simple miscalculation—is not enough; egregious attorney misconduct is enough.

Subsequently, in *Maples v. Thomas*, the Supreme Court considered whether attorney "error" may serve as cause to excuse a state procedural default. *Maples* involved a situation where

8

Maples' attorneys left their law firm and started new employment that did not allow them to continue representing Maples, who had been sentenced to death, while his state postconviction petition remained pending in the Alabama trial court. *See Maples v. Thomas*, 565 U.S. 266, 270 (2012). The attorneys "did not inform Maples of their departure and consequent inability to serve as his counsel. Nor did they seek the Alabama trial court's leave to withdraw." *Id.* Notably, "[n]either they nor anyone else moved for the substitution of counsel able to handle Maples' case." *Id.* at 270–71. When the Alabama trial court denied postconviction relief, it sent notice to the former attorneys at their former place of employment in New York. *Id.* at 271. Those notices were "returned, unopened, to the trial court clerk, who attempted no further mailing." *Id.* Ultimately, the time to appeal expired. *Id.* Maples eventually filed a § 2254 petition, and his petition was rejected as procedurally defaulted. *Id.*

In *Maples*, the Supreme Court noted that the existence of "cause" for purposes of overcoming procedural default depended upon "something *external* to the petitioner, something that cannot fairly be attributed to him [that] 'impeded [his] efforts to comply with the State's procedural rule.'" *Maples*, 565 U.S. at 280 (emphasis in original, first internal quotation marks omitted)) (quoting *Coleman*, 501 U.S. at 753). The Court left intact the general principle that, because a prisoner's post-conviction counsel was the prisoner's agent, and because the principal bears the risk of negligent conduct on the part of his agent, attorney error that is properly characterized as negligent would not be "external" to the petitioner and could not serve as cause to excuse a procedural default.

Thus, under *Maples*, attorney abandonment suffices to demonstrate cause to excuse procedural default. However, the conclusion that abandonment is sufficient does not automatically mean that it is required. Indeed, in *Young v. Westbrooks*, 702 F. App'x 255 (6th Cir. 2017), the

9

Sixth Circuit noted that there were other circumstances where ineffective assistance of postconviction counsel might serve as cause for a procedural default despite agency principles and even though counsel had not abandoned the prisoner.

After considering Petitioner's argument in support of cause and prejudice, the Court concludes that Petitioner has not sufficiently shown cause at this time. Petitioner's explanation of ineffective assistance does not rise to the level of attorney abandonment described in *Maples*. Here, like in *Young*, while appellate counsel may have been negligent and ineffective for erroneously filing the application for leave to appeal to the Michigan Supreme Court with the wrong appellate court and only correcting the error after the deadline to file the application with the supreme court had expired, there is nothing in the record before the Court to suggest that counsel "quit on [Petitioner's] case." *See id.* at 262. As the *Maples* Court recognized, "when a[n] . . . attorney misses a filing deadline, the petitioner is bound by the oversight and cannot rely on it to establish cause." *Maples*, 565 U.S. at 281.

Likewise, like in *Young* and unlike in *Maples*, "there was no severance of the agency relationship" between Petitioner and counsel. *See Young*, 702 F. App'x at 263. Nor could Petitioner plausibly suggest that there was. On the contrary, the record reflects that counsel attempted to correct the error in the filing of the application for leave to appeal, but the application was dismissed as untimely by the Michigan Supreme Court. Counsel filed a motion for reconsideration, which the supreme court denied. Notably, counsel continues to represent Petitioner on these § 2254 proceedings. Thus, while counsel may have been negligent, the record is clear that counsel has continued to act upon Petitioner's interests.

Abandonment "denotes renunciation or withdrawal, or a rejection or desertion of one's responsibilities, a walking away from the relationship." *See Cadet v. State of Fla. Dep't of Corr.*,

853 F.3d 1216, 1234 (11th Cir. 2017). At this time, the Court cannot conclude that counsel's ineffectiveness rises to the level of abandonment that is sufficient cause to overcome the procedural default. The facts set forth above distinguish Petitioner's case from the "veritable perfect storm of misfortune" that occurred in *Maples*. *See Maples*, 565 U.S. at 291 (Alito, J., concurring). While this Court "do[es] not condone counsel's behavior, [the Court is] also not at liberty to provide relief when the law simply does not provide for it." *Young*, 702 F. App'x at 265. As the Sixth Circuit noted, "[t]o our knowledge, no other court of appeals has held that a lawyer abandons his client despite filing a brief on his behalf, and we will not be the first to extend *Maples* in this fashion." *Id.*

As the Court indicated in its previous opinion, "[t]he Supreme Court has repeatedly expressed concern about attorneys presenting arguments regarding their own misconduct." *See Nassiri v. Mackie*, 967 F.3d 544, 547 (6th Cir. 2020). Indeed, in *Maples*, the Supreme Court suggested that the firm that had initially represented the petitioner should have "cede[d] [the petitioner's] representation to a new attorney, who could have made [his] abandonment argument plain to the Court of Appeals." *Maples*, 565 U.S. at 285 n.8; *cf. Christeson v. Roper*, 574 U.S. 373, 378 (2015) (explaining that "[c]ounsel cannot reasonably be expected" to argue that equitable tolling was justified by a "serious instance[] of attorney misconduct" when that claim would require counsel to "denigrate their own performance," thus "threaten[ing] their professional reputation and livelihood" (quoting *Holland*, 560 U.S. at 651–52)).

The Court recognized that Petitioner's case presented the same type of conflict identified in *Maples* and *Christeson*. In light of that conflict, the Court provided an opportunity for Petitioner to inform the Court whether he would elect to waive the conflict of interest. The Court noted that if Petitioner did not elect to waive the conflict, current counsel could not continue to represent

11

Petitioner in this matter, and the Court would provide counsel with time to locate new counsel or decide whether to proceed *pro se*.

As set forth above, Petitioner, through counsel, filed a notice (ECF No. 10) indicating that he is waiving the conflict of interest presented by the fact that Petitioner's current attorney is the same attorney whose negligence led to the rejection of Petitioner's application for leave to appeal to the Michigan Supreme Court as untimely. In light of Petitioner's waiver, the Court concludes that Petitioner has received a fair opportunity to present his arguments to overcome the procedural default. However, as thoroughly discussed *supra*, Petitioner's explanation of cause is insufficient to overcome the procedural default. Moreover, by waiving the conflict of interest, Petitioner is bound by appellate counsel's failure to timely file an application for leave to appeal to the Michigan Supreme Court and cannot rely upon that fact to establish cause. Given that conclusion, the Court need not consider whether Petitioner has established prejudice. *See Engle*, 456 U.S. at 134 n.43; *Leroy*, 757 F.2d at 100.

## B.    Fundamental Miscarriage of Justice

In *Schlup v. Delo*, 513 U.S. 298 (1995), the Supreme Court explained the fundamental miscarriage of justice exception to the procedural default bar as follows:

> Because Schlup has been unable to establish "cause and prejudice" sufficient to excuse his failure to present his evidence in support of his first federal petition, *see McCleskey v. Zant*, 499 U.S. 467, 493–494, 111 S. Ct. 1454, 1469–1470, 113 L. Ed. 2d 517 (1991), Schlup may obtain review of his constitutional claims only if he falls within the "narrow class of cases . . . implicating a fundamental miscarriage of justice," *id.*, at 494, 111 S. Ct., at 1470. Schlup's claim of innocence is offered only to bring him within this "narrow class of cases."

*Schlup*, 513 U.S. at 314–15 (footnote omitted). Essentially, the actual innocence claim described in *Schlup* is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Id*. at 315 (citing *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).

"'[A]ctual innocence' means factual innocence." *Bousley v. United States*, 523 U.S. 614, 623 (1998). Thus, in order to make a showing of actual innocence under *Schlup*, a petitioner must present new evidence showing that "it is more likely than not that no reasonable juror would have convicted [the petitioner]." *McQuiggin v. Perkins*, 569 U.S. 383, 399 (2013) (quoting *Schlup*, 513 U.S. at 327); *see also Coleman v. Mitchell*, 244 F.3d 533, 540 (6th Cir. 2001) (noting that actual innocence requires a showing "that 'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt'" (quoting *Schlup*, 513 U.S. at 329)), *superseded in other part by statute as recognized in Stewart v. Winn*, 967 F.3d 534, 540 (6th Cir. 2020). Given the rarity of such evidence, the allegation of actual innocence has been summarily rejected in virtually every case. *Calderon v. Thompson*, 523 U.S. 538, 559 (1998).

In support of his assertion that a fundamental miscarriage of justice would occur, Petitioner states:

> Mr. Thompson relies upon the recitation of facts contained in the Statement of Facts above. Mr. Thompson did not sexually assault the complainant in any way. There was no physical evidence of any of the alleged assaults. There were no independent witnesses to the alleged crimes. Mr. Thompson did not admit to any of the allegations. The ONLY evidence was the testimony of the complainant, a known liar and manipulator, who manufactured so many facts that were either completely rebutted or physically impossible. To be clear, Mr. Thompson lacked the ability to get erections except under very specific circumstances, yet the complainant claimed that he achieved erections in all different positions and repeatedly. She claimed that the acts occurred in the house, yet the house was filled with people who all testified unequivocally that they did not see or hear anything remotely akin to the complainant's version of events. The complainant even turned an innocent family phrase for helping each other out, the "IOUs," into some sort of sexual game.

(ECF No. 7, PageID.585–586.) Petitioner does not attempt to introduce new evidence. Rather, he merely attempts to relitigate evidence that was available at the time of trial through his argument that the evidence presented by the prosecution was insufficient for a jury to convict him. Thus, any claim of actual innocence that Petitioner raises has no merit and cannot justify excusing a procedural default.

13

### C.    Summary

For the foregoing reasons, the Court concludes that Petitioner's § 2254 petition is procedurally defaulted. Petitioner has not demonstrated sufficient cause to overcome the default given that he is bound by appellate counsel's failure to timely file an application for leave to appeal to the Michigan Supreme Court, and Petitioner cannot rely upon that fact to establish cause. Moreover, any claim of actual innocence raised by Petitioner has no merit and cannot justify excusing the procedural default presented here.

## III.    Certificate of Appealability

The Court must also determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.*

For the reasons set forth above, Petitioner's § 2254 petition is procedurally defaulted, and Petitioner has not demonstrated sufficient cause to overcome the default. Under *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), when a habeas petition is denied on procedural grounds, a certificate of appealability may issue only "when the prisoner shows, at least, [1] that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and [2] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Both showings must be made to warrant the grant of a certificate. *Id*.

Reasonable jurists could not find it debatable whether Petitioner's application is procedurally defaulted. Therefore, a certificate of appealability will be denied. Nonetheless, the

Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## <u>Conclusion</u>

The Court will enter an order denying a certificate of appealability and a judgment dismissing the petition with prejudice as procedurally defaulted.


Dated:    <u>March 17, 2025</u>                    <u>/s/ HALA Y. JARBOU</u>
                                                          Hala Y. Jarbou
                                                          Chief United States District Judge